STEPHEN P. BERZON (SBN 46540)
SCOTT A. KRONLAND (SBN 171693)
STACEY LEYTON (SBN 203827)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, California 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064
sberzon@altshulerberzon.com
skronland@altshulerberzon.com
sleyton@altshulerberzon.com

Attorneys for Proposed Intervenors
San Francisco Central Labor Council, Service
Employees International Union ("SEIU") Local 1021,
SEIU United Healthcare Workers-West, and
UNITE-HERE! Local 2

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOLDEN GATE RESTAURANT ASSOCIATION,<br><br>  Plaintiff,<br><br>  v.<br><br>CITY AND COUNTY OF SAN FRANCISCO,<br><br>  Defendant. | Case No. C06-6997 JSW<br><br>**NOTICE OF MOTION AND MOTION FOR LEAVE TO INTERVENE BY SAN FRANCISCO LABOR COUNCIL, SERVICE EMPLOYEES INTERNATIONAL UNION ("SEIU") LOCAL 1021, SEIU UNITED HEALTH CARE WORKERS-WEST, AND UNITE HERE! LOCAL 2**<br><br>DATE: April 6, 2007<br>TIME: 9:00 a.m.<br>PLACE: Courtroom 17, 16th Floor |

PLEASE TAKE NOTICE that on Friday, April 6, 2007 at 9:00 a.m., or as soon thereafter as counsel may be heard in Courtroom 17 of the United States District Court for the Northern District of California, located at 450 Golden Gate Ave., San Francisco, California 94102, the San Francisco Central Labor Council, Service Employees International Union ("SEIU") Local 1021, SEIU United Healthcare Workers-West, and UNITE-HERE! Local 2 (hereinafter "Unions") will and hereby do move this Court, pursuant to Federal Rule of Civil Procedure 24, for leave to intervene as defendants.

Unions ask this Court to permit them to intervene as of right under Rule 24(a) on the grounds that the motion is timely; Unions have a substantial interest in the subject of this action because the invalidation of the challenged ordinance would harm their members; disposition of the action would, as a practical matter, impair or impede Unions' ability to protect this interest; and Unions' interest may not be adequately represented by the current parties to the case. Alternatively, Unions ask the Court to permit them to intervene under Rule 24(b) because they seek to address the common legal question of whether the challenged ordinance is preempted by the federal Employee Retirement Income Security Act ("ERISA"), and intervention will not unduly delay or prejudice the adjudication of the rights of the original parties.

This motion for leave to intervene is based on this notice of motion and motion, the following memorandum of points and authorities, all pleadings on file in the case, and such argument as may be heard by this Court.

## INTRODUCTION

In this action, an association of employers, the Golden Gate Restaurant Association ("GGRA"), seeks to invalidate a new San Francisco law, the San Francisco Health Care Security Ordinance ("Ordinance"). GGRA contends that the Ordinance is preempted by ERISA, and has sued the City and County of San Francisco along with Does 1 through 15.

The Ordinance takes a comprehensive approach to health care reform, and aims to expand access to and the affordability of health care services in the City and County of San Francisco through two key components: first, the Ordinance establishes a Health Access Program ("HAP") to provide medical services with an emphasis on preventive care to all uninsured San Francisco residents; and second, the

Ordinance requires medium and large-sized employers (including for-profit employers with 20 or more employees and non-profit employers with 50 or more employees) to make minimum health care expenditures that benefit covered employees. S.F. Mun. Code §14.1 et seq. Employers can satisfy this minimum expenditure requirement by providing health care benefits to their employees (through health insurance, direct delivery of benefits, health savings accounts, direct reimbursement of medical expenses, or other means), or by making payments to the City which will provide medical services to uninsured employees through the HAP.

Unions request leave to intervene in the action as defendants to defend the Ordinance. Defendant the City and County of San Francisco consents to Unions' intervention. Plaintiff GGRA has not yet taken a position on Unions' intervention.

Members of Unions will benefit from the Ordinance because their employers will be required to make minimum health care expenditures on their behalf. The plaintiff GGRA seeks invalidation of the Ordinance, which will lift this legal obligation. That being so, Unions have a significant interest in the outcome of this lawsuit that is not shared with the public at large. In nearly identical circumstances, the Ninth Circuit held that a union could intervene as of right in order to defend a prevailing wage law against an employer challenge. *See Californians for Safe and Competitive Dump Truck Trans. v. Mendonca*, 152 F.3d 1184, 1189 (9th Cir. 1998); *see also Alameda Newspapers, Inc. v. City of Oakland*, 95 F.3d 1406, 1411-1412 & n. 8 (9th Cir. 1996) (labor union intervened to defend city boycott of a newspaper against claim that the city's action was preempted by federal law); *Employee Staffing Services, Inc. v. Aubry*, 20 F.3d 1038, 1042-43 (9th Cir. 1994) (labor union intervened to defend state workers' compensation law against claim that it was preempted by federal law).

As we show below, the standards for intervention of right under Federal Rule of Civil Procedure 24(a) are met in this case, so the motion for leave to intervene should be granted. In the alternative, Unions should be permitted to intervene under Federal Rule of Civil Procedure 24(b).

**INTEREST OF PROPOSED INTERVENORS**

The San Francisco Central Labor Council ("Labor Council") is the local body of the American Federation of Labor and Congress of Industrial Organizations ("AFL-CIO"). It represents more than

150,000 union members and their families who belong to over 150 affiliated member unions. Proposed Intervenors' Answer ¶28.[1] The mission of the Labor Council is to improve the lives of workers, their families, and others by bringing economic justice to the workplace and social justice to the community. *Id.* ¶29. Among the purposes articulated in the Labor Council's Constitution and Bylaws are "[t]o propose, support, and promote legislation favorable to . . . the interest of workers and organized labor." *Id.* The Labor Council lobbied, testified, and otherwise advocated in favor of the Ordinance. *Id.* ¶30. It has made similar efforts in support of other local health care and prevailing wage ordinances as well as statewide health care and prevailing wage legislation. *Id.*

SEIU United Healthcare Workers-West ("UHW") includes as members 140,000 health care workers in California. Intervenors' Answer ¶31. SEIU Local 1021 represents 54,000 members who work for public and nonprofit employers in Northern California. *Id.* ¶32. UHW and SEIU Local 1021's members include over 20,000 individuals who live in San Francisco and over 30,000 who work here, and these unions represent the interests of those members and their families in obtaining quality and affordable health care. *Id.* ¶¶31-32.

The SEIU Constitution sets forth a "vision . . . of a society . . . [w]here government plays an active role in improving the lives of working people" and includes among its objects and purposes "[s]ecuring of economic advantages, including better wages, hours and working conditions, through . . . legislative and political action . . . ." Intervenors' Answer ¶33. In support of this mission, SEIU engages in lobbying and other advocacy to support measures that expand access to health care for SEIU members, their families, and other working people. *Id.* ¶34. Both UHW and SEIU Local 1021 lobbied, testified, and otherwise advocated in favor of the Ordinance, and have made similar efforts in support of other local and statewide health care legislation. *Id.*[2] Both UHW and SEIU Local 1021 are

---

[1] For purposes of a motion to intervene, the allegations of the prospective intervenor's proposed pleading must be taken as correct. *See Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810, 819 (9th Cir. 2001) ("[A] court is required to accept as true the non-conclusory allegations made in support of an intervention motion.")

[2] At the time the Ordinance was under consideration, the San Francisco members of SEIU Local 1021 belonged to SEIU Local 790, which engaged in the advocacy at issue. Intervenors' Answer ¶¶32, 34. At the beginning of this year, SEIU Local 790 united with nine other local unions

(continued...)

represented on the HAP Advisory Council, which was established to contribute to development and design of the program. *Id.*

UNITE HERE! Local 2 represents approximately 10,000 members who work in hotels and restaurants in San Francisco, including restaurants that belong to the plaintiff GGRA. Intervenors' Answer ¶35. Approximately 7,200 of these members also reside in San Francisco. *Id.* Improvement of the general welfare, economic interests, and social conditions of all workers, including UNITE HERE!'s members and their families as well as workers who do not belong to unions, is among the objectives set forth in UNITE HERE!'s international constitution. *Id.* ¶36. UNITE HERE! Local 2 lobbied, testified, and otherwise advocated in favor of the Ordinance, and has made similar efforts in support of other local minimum wage legislation and statewide health care legislation. *Id.* ¶37. It is also represented on the HAP Advisory Council. *Id.*

Collectively Unions represent tens of thousands of San Francisco workers, who are the beneficiaries of the Ordinance. The Ordinance requires these workers' employers to make minimum health care expenditures on their behalf. In doing so, it will provide greater and less expensive access to health care for Unions' members and will prevent a race to the bottom by Unions' members' employers which could result in cuts to health care expenditures that are currently being made. If plaintiff's challenge succeeds, employers would no longer be under this legal obligation, and Unions' members will not benefit from the Ordinance's mandates.

## ARGUMENT

### I. INTERVENTION AS OF RIGHT

Intervention as of right in federal lawsuits is governed by Fed. R. Civ. P. 24(a), which provides in pertinent part:

> Upon timely application anyone shall be permitted to intervene in an action: . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

---

[2](...continued)
in Northern California to form SEIU Local 1021. *Id.* ¶32.

The Ninth Circuit applies a four-part test to evaluate claims for intervention under this rule:

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

*Forest Conservation Council v. United States Forest Service*, 66 F.3d 1489, 1493 (9th Cir. 1995); *see also United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002); *Mendonca*, 152 F.3d at 1189. In applying that test, Rule 24(a) must be construed "broadly in favor of potential intervenors," *City of Los Angeles*, 288 F.3d at 397, and in light of the "liberal policy in favor of intervention," *Forest Conservation Council*, 66 F.3d at 1493. This four-part test is satisfied, as we now show.

### A.  The Motion is Timely.

In determining timeliness, three factors are weighed: (1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of any delay. *See United States v. Oregon*, 913 F.2d 576, 588-89 (9th Cir. 1990). In this case, the motion to intervene is being filed early in the case, before any discovery has commenced or the first scheduled Case Management Conference has been held, and is set for hearing before the date set by stipulation and order for the filing of cross-motions for summary judgment. Unions' intervention will not delay the litigation of this action or prejudice any party.

### B.  Unions Have a Sufficient Interest in the Subject Matter of the Action.

Rule 24(a)'s requirement of an "interest relating to the property or transaction" requirement must be construed expansively. *See Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129, 132-36 (1967). The requirement "is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *City of Los Angeles*, 288 F.3d at 398 (internal quotation marks omitted). Thus, "[w]hether an applicant for intervention demonstrates sufficient interest in an action is a practical, threshold inquiry. No specific legal or equitable interest need be established." *Green v. United States*, 996 F.2d 973, 976 (9th Cir. 1993). Two factors are important in deciding whether a party has a sufficient interest under Rule 24(a): (1) whether the interest asserted is "protected under some law" and (2) whether there is a "relationship" between the legally protected interest and the claims at issue. *Id.*

Here, the Ordinance protects the interest of Unions' members by requiring their employers to make minimum health care expenditures for their benefit. The Ordinance defines "health care expenditure" as follows:

> [A]ny amount paid by a covered employer *to its covered employees or* to a third party *on behalf of its covered employees* for the purpose of providing health care services for covered employees or reimbursing the cost of such services for its covered employees, including, but not limited to (a) contributions by such employer on behalf of its covered employees to a health savings account as defined under section 223 of the United States Internal Revenue Code or to any other account having substantially the same purpose or effect without regard to whether such contributions qualify for a tax deduction or are excludable from employee income; (b) reimbursement by such covered employer to its covered employees for expenses incurred in the purchase of health care services; (c) payments by a covered employer to a third party for the purpose of providing health care services for covered employees; (d) costs incurred by a covered employer in the direct delivery of health care services to its covered employees; and (e) payments by a covered employer to the City to fund the Health Access Program for uninsured San Francisco residents, including employees. . . .

S.F. Admin. Code §14.1(b)(7) (emphasis added). Thus, whether employers' expenditures are in the form of health care insurance, contributions to health savings accounts, direct reimbursement, direct delivery of health care services, or payments to the City's HAP, they will benefit Unions' members.

Additionally, the Ordinance protects the interests of Unions' members whose employers do currently make the required minimum expenditures but compete in the same market against other employers that do not make such expenditures. The Ordinance is expressly directed at "preventing a 'race to the bottom' in which employers stop paying for employee health care to remain competitive . . . ." Ordinance, §1 ("Declaration of legislative findings and intent"). Thus, Unions' members whose employers currently make health care expenditures have an interest in maintaining the health benefits that they currently enjoy, which without the Ordinance will be threatened by competition from other employers who do not have the same health care costs.

Unions have standing to intervene based on the protectable interest of their members, as long as the members would themselves have standing, the members' interest is germane to the union's purpose, and neither the claim asserted nor the relief requested would require the participation of individual members in the action. *See Automobile Workers v. Brock*, 477 U.S. 274, 281-82 (1986) (holding union had standing based on its members' interest in obtaining benefits);[3] *Mendonca*, 152 F.3d

---

[3] *Brock* held the members' interest in obtaining benefits germane to the union's purpose
(continued...)

at 1189-90 (upholding grant of intervention of right based on interest of union's members). In the instant case, those of Unions' members who lack health insurance and work for employers that do not currently make the minium required health care expenditures *or* whose employers do make such expenditures would have standing to defend the Ordinance; these interests are germane to Unions' purposes of improving their members' living standards, including by improving access to and the affordability of health care services and by advocating for such through legislation; and the participation of individual members of Unions in this lawsuit would be unnecessary in light of the claim asserted and relief sought.

Furthermore, there is a "relationship" between this "legally protected interest" in securing employer health care contributions on behalf of Unions' members and the claims at issue in this lawsuit, because the plaintiff GGRA seeks to enjoin application of the law that protects that interest. *See City of Los Angeles*, 288 F.3d at 398 ("The relationship requirement is met if the resolution of the plaintiff's claims actually will affect the applicant.") (internal quotation marks omitted); *Forest Conservation Council*, 66 F.3d at 1494 (the requisite "relationship" between the "legally protected interest" and the action exists when "the injunctive relief sought by plaintiffs will have direct, immediate, and harmful effects" upon applicants' interest).

Indeed, this case is structurally indistinguishable for purposes of intervention from *Mendonca*. In both cases, the challenged law protects employees by adopting minimum benefits-related standards. In *Mendonca*, the state prevailing wage law required minimum employer payments for wages and other employee benefits (including health benefits). Cal. Labor Code §1773.1. In the instant case, the Ordinance adds a minimum health benefit expenditure requirement to San Francisco's existing minimum wage law, S.F. Admin. Code §12R.4. In *Mendonca*, the union was granted leave to intervene to defend the prevailing wage law against an employer preemption challenge because its members had a substantial interest in receiving prevailing wages, that interest was protected by the prevailing wage law, and there was a relationship between that interest and the lawsuit. *Mendonca*, 152 F.3d at 1190;

---

[3](...continued)
based on the union constitution's commitment to securing benefits and the union's having lobbied for the specific benefits program at issue. 477 U.S. at 286.

*see also Tocher v. City of Santa Ana*, 219 F.3d 1040, 1045 (9th Cir. 2000) (association of towing companies has sufficient interest to justify intervention of right in suit challenging city regulatory scheme that benefitted the member companies). In the instant and nearly identical case, Unions should be granted leave to intervene to defend the Ordinance against the GGRA's preemption challenge because their members have a substantial interest in receiving the benefits of their employers' health care expenditures, that interest is protected by the Ordinance, and there is a relationship between the interest and the lawsuit.

### C. The Disposition of this Action May Impair Unions' Ability to Protect Their Interest.

The third part of the Rule 24(a) inquiry "is whether the district court's decision will result in *practical* impairment of the interests of [the applicants in intervention], not whether the decision itself binds them." *Yniguez v. State of Arizona*, 939 F.2d 727, 735 (9th Cir. 1991) (emphasis in original); *see also Forest Conservation Council*, 66 F.3d at 1493 (issue is whether disposition of the action "may as a practical matter impair or impede" the interests of the applicants in intervention).[4]

The outcome of this lawsuit unquestionably may impair Unions' ability to protect their members' interest in ensuring that their employers make minimum health care expenditures on their behalf. Plaintiff GGRA seeks an injunction to prohibit city and county officials from implementing or enforcing the health care expenditure provisions of the Ordinance and a declaratory judgment that these provisions are invalid. Were the court to enjoin the enforcement of these provisions of the Ordinance, Unions and their members would lose the protections of the statute. *See Mendonca*, 152 F.3d at 1190 ("[I]n the event Dump Truck prevailed, it would have clearly impaired [the union]'s members' right to receive the prevailing wage").

### D. Unions' Interest May Not Be Adequately Represented by the Parties to the Action.

An applicant in intervention need not show that the existing parties will engage in conduct

---

[4] The "practical impairment" standard of Rule 24(a) resulted from a 1966 amendment "designed to liberalize the right to intervene in federal actions." *Nuesse v. Camp*, 385 F.2d 694, 699 (D.C. Cir. 1967); *see also* Fed. R. Civ. P. 24(a)(2), Advisory Committee Note ("[I]f any [applicant] would be substantially affected in a practical sense by the determination made in an action, [the applicant] should, as a general rule, be entitled to intervene").

detrimental to the applicant's interest. To the contrary, the requirement of inadequacy of representation "is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be minimal." *Trbovich v. United Mine Workers*, 404 U.S. 525, 538 n. 10 (1972) (citation omitted); *see also Forest Conservation Council*, 66 F.3d at 1498 ("[I]t is sufficient to show that representation *may* be inadequate") (emphasis in original). Whether representation may be inadequate has nothing to do with the quality of the existing defendants' attorneys: "Rule 24 requires that we look to the adequacy or inadequacy of representation by 'existing parties' not counsel." *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 529 (9th Cir. 1983).

Here, plaintiff GGRA represents the interests of employers who will be subject to the minimum expenditure requirement and want to invalidate that requirement. The interests of these employers are contrary to those of the employees who are represented by Unions (including some who are employed by members of GGRA) and want the Ordinance to go into effect.

The existing defendant, the City and County of San Francisco, represents the interests of the public at large, not the particular interests of Unions or their members or affiliates. The Ninth Circuit recognized the importance of this distinction in *Forest Conservation Council*, noting that the "government must represent the broad public interest," not that of a particular subgroup, and where the intervenor has an interest *not* identical to that of the public at large, the government's representation of the "more narrow, parochial interests" of the intervenor may not be adequate. 66 F.2d at 1489. Thus, in *Forest Conservation Council*, the Ninth Circuit held that the district court erred by not granting intervention in a case already being defended by the United States Forest Service because the intervenors had a narrower interest than the public.

In the instant case, the public at large includes businesses and business owners in San Francisco who may claim to be harmed by the requirements of the Ordinance. In fact, the City and County of San Francisco's HAP Advisory Council includes representatives of businesses that are covered by the Ordinance's minimum health care contribution requirement, including the plaintiff GGRA. Precisely because the interests of labor unions and their members can be more narrow than the interests of the public at large, unions have been permitted to intervene in actions structurally identical to this case notwithstanding that the existing defendants included public officials. *See, e.g., Mendonca,* 152 F.3d

at 1189-90; *Alameda Newspapers*, 95 F.2d at 1411-1412 & n. 8; *WSB Electric*, 88 F.3d at 790; *Employee Staffing Services*, 20 F.3d at 1042-43.

Further, the City and County of San Francisco has its own institutional interests in relation to the Ordinance. As the operator of health care entities that currently provide emergency services for uninsured residents without compensation, *see* Ordinance §1 ("San Francisco taxpayers bear the cost of paying for emergency room visits and other unnecessarily expensive health care for the uninsured"), and which will likely deliver the health care services to HAP enrollees, the existing defendant has a further interest that is distinct from that of Unions' members.

For these reasons, neither the plaintiff nor the defendant adequately represents the interests of Proposed Intervenors, which should be granted leave to intervene as of right.

**II.    PERMISSIVE INTERVENTION**

In the alternative, Unions should be permitted to intervene pursuant to Federal Rule of Civil Procedure 24(b), which allows permissive intervention "when an applicant's claim or defense and the main action have a question of law or fact in common." Fed. R. Civ. P. 24(b)(2). In exercising discretion under Rule 24(b), the Court must also consider "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Id.* There is no requirement of a significant protectable interest. *See Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1108 (9th Cir. 2002).

Rule 24(b)'s requirement of a common question of law or fact is met in this case. The common question of law which plaintiff, defendant, and Unions seek to address is whether the Ordinance is valid (i.e. not ERISA-preempted). There also is no basis for concern in this case that "intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Fed. R. Civ. P. 24(b)(2). Unions have sought intervention at the outset of the litigation and are not requesting any delay.

**CONCLUSION**

For the foregoing reasons, the Court should grant Unions' motion for leave to intervene as defendants.

| | |
|---|---|
| Dated: March 1, 2007 | Respectfully submitted,<br><br>STEPHEN P. BERZON<br>SCOTT A. KRONLAND<br>STACEY M. LEYTON<br>Altshuler Berzon LLP<br><br>By: _____/s/_____<br>　　　　STACEY M. LEYTON<br><br>Attorneys for Proposed Intervenors |