IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

GOLDEN GATE RESTAURANT ASSOCIATION,

    Plaintiff,

v.

CITY AND COUNTY OF SAN FRANCISCO and DOES 1-15,

    Defendants.

No. C 06-06997 JSW

**ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Now before the Court are the cross motions for summary judgment filed by Plaintiff Golden Gate Restaurant Association ("Plaintiff") and the City and County of San Francisco ("the City"). Intervenors San Francisco Central Labor Council, Service Employees International Union Local 1021, SUIU United Healthcare Workers-West and Unite-Here!, Local 2 (collectively "the Intervenors") have also moved for summary judgment on behalf of the City and have joined in the City's opposition to Plaintiff's motion. Having considered the parties' pleadings, the relevant legal authority, and having had the benefit of oral argument, the Court hereby GRANTS Plaintiff's motion for summary judgment and DENIES the City's and the Intervenors' motion for summary judgment.

**BACKGROUND**

In 2006, the San Francisco Board of Supervisors unanimously passed, and the Mayor signed into law, the San Francisco Health Care Security Ordinance (the "Ordinance"). The Ordinance contains two key components related to the regulation of health care in San Francisco. The first is an employer health spending requirement and the second, is a government health care program, funded in part by those employer contributions. The employer spending requirement, which does not become operative until January 1, 2008, is the subject of the pending suit and mandates that medium and large businesses make minimum health care expenditures on behalf of covered employees. Specifically, in 2008, a private employer with between 20 and 99 employees and a nonprofit with 50 or more employees would, for any employee who has been employed for 90 days and works more than 10 hours per week, make health care expenditures of $1.17 per hour on behalf of that employee. Ord. § 14.1(b)(8); Reg. No. 5.2(A)(2). A private employer with 100 or more employees would make health care expenditures of $1.76 per hour on behalf of each covered employee. Ord. § 14(b)(8); Reg. No. 5.2(A)(1).

The Ordinance sets out a number of non-exclusive qualifying health care expenditures, such as contributions to health savings accounts, direct reimbursement to employees for some of the expenses incurred in the purchase of health care services, payments to third parties for the purpose of provided health care services, costs incurred in the direct delivery of health care services, or payments by the employer to the City "to be used on behalf of covered employees." Ord. § 14.1(b)(7).

The Ordinance also establishes a government health care program operated by the Department of Public Health. Using the expenditures paid by private employers, individuals, and contributions from the City, the Ordinance creates a City fund to operate a Health Access Program ("HAP"). Ord. § 14.2(d). The HAP would deliver health care to its participants from a network consisting of San Francisco General Hospital, Department of Health clinics, and participating non-profit and private providers. Ord. § 14.2(a). The HAP, funded in part by the City's general fund and in part by the employer's contributions, would be available to uninsured

San Francisco residents, regardless of their employment status. Enrollees would pay quarterly participation fees on a sliding scale basis. Nonresidents who work in the City would not qualify for HAP participation, but the program would set up a medical reimbursement account and those nonresident employees could draw from the account to obtain reimbursement for medical expenses, including the payment of health insurance premiums. Ord. §§ 14.1(b)(7), 14.2(g).

Employers covered by the Ordinance would be required to maintain "accurate records of health care expenditures" and "proof of such expenditures," allow "reasonable access" by City officials to such records, and annually report "such other information" that the City requires. Ord. § 14.3(b). The Ordinance also requires that all employers avoid reducing their workforce below any of the Ordinance thresholds or prove that the reduction was not done to avoid the thresholds. Ord. § 14.4(c). Violation of any of these requirements could result in significant penalties and presumptions against employers. Ord. § 14.3(b). The City would be able to collect penalties through administrative enforcement or via a civil action for penalties, costs and attorneys' fees. Ord. § 14.4(e)(3).

Golden Gate Restaurant Association, a group established to promote, extend and protect the general interests of the restaurant industry, brought suit on November 8, 2006, seeking declaratory and injunctive relief on the theory that the Ordinance's spending requirement is preempted by ERISA. The parties cross-moved for summary judgment on that legal issue.

The Court shall address additional facts as necessary to its analysis in the remainder of this Order.

**ANALYSIS**

**A.     Legal Standard.**

A court may grant summary judgment as to all or a part of a party's claims. Fed. R. Civ. P. 56(a). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*,

3

477 U.S. 242, 248-49 (1986). A fact is "material" if the fact may affect the outcome of the case. *Id.* at 248. "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986). The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Id.* Once the moving party meets this initial burden, the non-moving party must go beyond the pleadings and by its own evidence "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)) (stating that it is not a district court's task to "scour the record in search of a genuine issue of triable fact"). If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

Whether ERISA acts to preempt a state or local law is a question of law. *Farr v. U.S. West Communications, Inc.*, 151 F.3d 908, 913 (9th Cir. 1998). Under the provisions of ERISA, "State law" includes "all laws, decisions, regulations, or other State action having the effect of law," while "State" includes "any political subdivisions thereof, or any agency or instrumentality of either, which purpose to regulate, directly or indirectly, the terms and conditions of employee benefit plans covered by [ERISA]." 29 U.S.C. §§ 1144(c)(1), (c)(2). For purposes of the analysis, "the constitutionality of local ordinances is analyzed in the same way as that of statewide laws." *Hillsborough County v. Automated Medical Laboratories, Inc.*, 471 U.S. 707, 713 (1985).

**B. ERISA Preemption.**

Congress enacted the Employee Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, as a comprehensive legislative scheme "to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983). By enacting such a broad scheme, Congress also sought to protect employers by "eliminating the threat of conflicting or inconsistent State and local regulation of employee benefit plans." *Id.* at 99. To further this goal of nationwide uniformity and consistency, Congress included a preemption clause, section 514(a), which "conspicuous for its breadth, it establishes as an area of exclusive federal concern the subject of every state law that 'relate[s] to' an employee benefit plan governed by ERISA." *FMC Corp. v. Holliday*, 498 U.S. 52, 58 (1990). The clause is considered "one of the broadest preemption clauses ever enacted by Congress." *PM Group Life Insurance Co. v. Western Growers Assurance Trust*, 953 F.2d 543, 545 (9th Cir. 1992).

Section 514(a) provides that ERISA "supercede[s] any and all State laws insofar as they now or hereafter relate to any employee benefits plan." 29 U.S.C. § 1144(a). The majority of health care options provided for employees by private employers qualify as an "employee welfare benefit plan," defined by ERISA as "any plan, fund, or program which ... was established or is maintained for the purpose of providing its participants or their beneficiaries, through the purchase of insurance or otherwise, ... medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident [or] disability...." 29 U.S.C. § 1002(1).

State laws are preempted by ERISA "insofar as they may now or hereafter relate to any employee benefit plan" regulated by ERISA. 29 U.S.C. § 1144(a). "But before a court wades into this provision's 'veritable Sargasso Sea of obfuscation,' it must first resolve the simpler question of whether a party may assert a claim under ERISA." *Miller v. Rite Aid Corp.*, 504 F.3d 1102, 1105 (9th Cir. 2007) (citing *Toumajian v. Frailey,* 135 F.3d 648, 653 n.3 (9th Cir.1998) (citation and internal quotation marks omitted)). The task of developing a clear rule to identify whether ERISA preempts a particular state law "has bedeviled the Supreme Court." *Rutledge v. Seyfarth, Shaw, Fairweather & Geraldson*, 201 F.3d 1212, 1216 (9th Cir. 2000)

(citing *Dillingham*, 519 U.S. at 335) (1997) (Scalia, J., concurring) ("Since ERISA was enacted in 1974, this Court has accepted certiorari in, and decided, no less than 14 cases to resolve conflicts in the Courts of Appeals regarding ERISA pre-emption of various sorts of state law. The rate of acceptance, moreover, has not diminished...") (footnote omitted)).

The language of ERISA's preemption provision – covering all laws that relate to an ERISA plan – is clearly expansive. *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995). A state law relates to an ERISA employee benefit plan "if it has a connection with or reference to such a plan." *Shaw*, 463 U.S. at 97. The analysis of whether a state law is preempted by ERISA follows one of two paths – if the law is either found to be connected with or to make reference to an ERISA plan, the law is found to be preempted.

"A state law that 'relates to' an ERISA plan is preempted by ERISA ' even if the law is not specifically designed to affect such [a] plan ..., or the effect is only indirect.'" *Aloha Airlines v. Ahue*, 12 F.3d 1498, 1504 (9th Cir. 1993) (citing *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990)). Only those state laws that "relate to" ERISA plans are preempted. *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 23 (1987). Although the text of the ERISA preemption provision is clearly expansive, courts have recognized that the term "relate to" cannot be "taken to extend to the furthest stretch of its indeterminacy," or else "for all practical purposes preemption would never run its course." *Travelers*, 514 U.S. at 655. Indeed, "applying the 'relate to' provision according to its terms was a project doomed to failure, since, as many a curbstone philosopher has observed, everything is related to everything else." *California Division of Labor Standards Enforcement v. Dillingham Construction*, 519 U.S. 316, 335 (1997). "Some state actions may affect employee benefit plans in too tenuous, remote or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw*, 463 U.S. at 100 n.21; *Aloha Airlines*, 12 F.3d at 1504. Accordingly, the Court cannot rely on "uncritical literalism" but must rather attempt to ascertain whether Congress would have expected the particular statute at issue to be preempted. *Travelers*, 514 U.S. at 656.

In order to evaluate whether the normal presumption against preemption has been overcome in any particular case, the Court "must go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." *Id.* To determine Congressional intent, the Court must examine the "objectives of the ERISA statute" and "the nature of the effect of the state law on ERISA plans." *Dillingham*, 519 U.S. at 325. In analyzing the basic objectives of Congress in passing the broad preemption clause of ERISA, the Supreme Court has found that the "basic thrust of the pre-emption clause [is] to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans." *Travelers*, 514 U.S. at 657. The Court has also emphasized more generally that the "principal object of the statute [ERISA] is to protect plan participants and beneficiaries." *Boggs v. Boggs*, 520 U.S. 833, 845 (1997).

However, "the Court has established a presumption that Congress did not intend ERISA to preempt areas of traditional state regulation that are quite remote from the areas with which ERISA is expressly concerned – reporting, disclosures, fiduciary responsibility, and the like." *Rutledge*, 201 F.3d at 1217 (internal citations omitted). The Court has repeatedly held that we "must presume that Congress did not intend to preempt areas of traditional state regulation." *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 740 (1985). Where "federal law is said to bar state action in fields of traditional state regulation ... we have worked on the 'assumption that the historic police powers of the States were not to be superceded by the Federal Act unless that was the clear and manifest purpose of Congress.'" *Travelers*, 514 U.S. at 655 (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). In particular, ERISA was not intended to supplant state law, especially in cases involving "fields of traditional state regulation," which include "the regulation of matters of health and safety." *DeBuono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806, 814 n.8 (1997) (citations omitted). "[N]othing in the language of [ERISA] or the context of its passage indicates that Congress chose to displace general health care regulation, which historically has been a matter

of local concern." *Travelers*, 514 U.S. at 662 (citing *Hillsborough County v. Automated Medical Laboratories, Inc.*, 471 U.S. 707, 719 (1985)).

However, the Supreme Court has regularly stated that the preemption clause of ERISA "indicates Congress's intent to establish the regulation of employee welfare benefit plans 'as exclusively a federal concern.'" *Travelers*, 514 U.S. at 656 (citing *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981)). Any state law that mandates employee benefit structures or their administration is preempted by ERISA. *Travelers*, 514 U.S. at 658. Such state-imposed regulation of employers' provision of employee benefits conflicts with ERISA's goal of establishing uniform, nationwide regulation of employee benefit plans. *Retail Industry Leaders Association v. Fielder*, 475 F.3d 180, 191 (4th Cir. 2007) (citing *Travelers*, 514 U.S. at 657-58).

The standard of whether a state law is preempted by ERISA because it makes reference to an ERISA plan applies more narrowly. The Court must examine the text of the statute to determine whether its own terms bring ERISA plans under its operation. *See Dillingham*, 519 U.S. at 325 (explaining that a state law contains a "reference to" an ERISA plan if it "acts immediately and exclusively upon ERISA plans" or if "the existence of ERISA plans is essential to the law's operation."); *see also District of Columbia v. Greater Washington Bd. of Trade*, 506 U.S. 125, 128 (1992) (invalidating a law that required an employer who provides health insurance coverage for an employee to provide the equivalent insurance while the employee was receiving workers compensation benefits). ERISA preempts state laws that relate to employee benefit plans even if they only indirectly affect those plans. *Ingersoll-Rand*, 498 U.S. at 139.

**C. The Ordinance is Preempted by Having a Connection to and Making Unlawful Reference to Employee Benefit Plans.**

The Ordinance's health care expenditure requirements are preempted because they have an impermissible connection with employee welfare benefit plans. By mandating employee health benefit structures and administration, those requirements interfere with preserving employer autonomy over whether and how to provide employee health coverage, and ensuring uniform national regulation of such coverage. The Ordinance's provisions also make unlawful

8

reference to benefit plans because they refer to, are designed to act immediately upon, and cannot operate successfully without the existence of employee welfare benefit plans.

### 1. Ordinance Requirements Have Impermissible Connection With Employee Benefit Plans.

ERISA was promulgated, among other reasons, to set uniform standards, including "rules concerning reporting, disclosure and fiduciary responsibility." *Shaw*, 463 U.S. at 91. The statute enables employers to adopt, modify or terminate welfare plans, in accordance with national standards, and mandates that "private parties, not the Government, control the level of benefits" under ERISA plans. *Alessi*, 451 U.S. at 511. ERISA enables private employers to set and maintain employee benefit plans in order to encourage employers to set higher benefit levels by streamlining administration and decreasing employee benefit plan costs. *Inter-Modal Rail Employees Association v. Atchison, Topeka & Santa Fe Railway*, 520 U.S. 510, 515 (1997). Although the City contends that the Ordinance's health care expenditure requirements do not necessarily affect the levels contributed to any specific private employer's ERISA plan, the Court finds that the Ordinance affects plan administration, a core area of ERISA concern.

To aid in determining the whether a state law is connected with an ERISA benefit plan, the Ninth Circuit has identified the following factors:

> (1) whether the state law regulates the types of benefits of ERISA employee welfare plans;
> (2) whether the state law requires the establishment of a separate employee benefit plan to comply with the law;
> (3) whether the state law imposes reporting, disclosure, funding, or vesting requirements for ERISA plans; and
> (4) whether the state law regulated certain ERISA relationships, including relationships between an ERISA plan and employer and, to the extent an employee benefit plan is involved, between the employer and the employee.

*Operating Engineers Health and Welfare Trust Fund v. JWJ Contracting Co.*, 135 F.3d 671, 678 (9th Cir. 1998) (citing *Aloha Airlines*, 12 F.3d at 1498)).

Here, the provisions of the Ordinance requiring certain mandatory levels of health care coverage for covered San Francisco employees regulates the types of benefits of ERISA employee welfare plans. The provisions require private employers to meet a certain level of benefits; and those benefits are the type regularly provided by employer ERISA plans.

9

The Court does not find the second factor indicates a connection between the statute and ERISA plans. Although the Ordinance's creation of the City's Health Access Program resembles an alternate ERISA plan in some ways, the Court is not persuaded that the separate public health care plan envisioned by the Ordinance actually creates a separate *de facto* ERISA plan.

Third, the requirements of the Ordinance have an impermissible connection with employee benefit plans because they impose on employers specific recordkeeping, inspection and other administrative burdens related to the administration of their private healthcare expenditures. The Ordinance requires employers to maintain accurate records of all health care expenditures, allow the City access to all such records, and provide information regarding health care expenditures to the City on an on-going basis, including "such other information" as the City may require. Ord. § 14.3(b). The Ordinance also requires the City's Office of Labor Standards Enforcement to create procedures "for covered employees to maintain accurate records" and to "provide a report to the City." Ord. § 14.4(a). Failure by an employer to maintain accurate records, to prepare an annual report detailing employer-provided health care expenses, or to permit the audit and inspection of its records subjects an employer to substantial daily penalties. Ord. §§ 14.3(b), 14.4(e)(2).

The parties contest the extent of the administrative recordkeeping requirements and debate the complexity and extent of the necessary mathematical computations to determine compliance with the expenditure requirements. Whether the computations are complex or simple, the requirements on employers under the Ordinance are ongoing and directly affect the administrative scheme of providing healthcare benefits. *See Aloha Airlines*, 12 F.3d at 1505 (holding that state and local laws that singled out employer-provided health care costs and required reports of such costs were preempted for several reasons, including that because the state statute "creates potential reporting requirements for [the plaintiff's] ERISA plans, ... and prompts disclosure and funding requirements, as outlined in *Shaw*, it satisfies the 'relates to' [ERISA preemption] standard."); *contra Patel v. Sugen, Inc.*, 354 F. Supp. 2d 1098, 1105 (N.D. Cal. 2005) (citing *Delaye v. Agripac, Inc.*, 39 F.3d 235, 237 (9th Cir. 1994) (no preemption

where employer is required only to make a single arithmetical calculation to determine eligibility for questioned scheme)).

Lastly, the Court is persuaded that the Ordinance directly and indirectly affects the structure and administration of ERISA plans. The expenditure requirements affect the structure of private employers' already existing plans by requiring that, in order to comply with the City's additional requirements, employers either modify the administration of their existing ERISA plans or structure their additional payments with reference to the amounts paid under the existing plans. "[E]ven if [options provided by statute] were a meaningful avenue by which [the employer] could incur non-ERISA healthcare spending, we would still conclude that the [statute] had an impermissible 'connection with' ERISA plans. The undeniable fact is that the vast majority of any employer's healthcare spending occurs through ERISA plans. Thus, the primary subjects of the [statute] are ERISA plans, and any attempt to comply with the [statute] would have direct effects on the employer's ERISA plans." *Fielder*, 475 F.3d at 196; *see also Egelhoff v. Egelhoff*, 532 U.S. 141, 147-48 (2001) (holding that a Washington state statute that binds ERISA plan administrators to a particular choice of rules for determining beneficiary status has an impermissible "connection with" ERISA, as the statute "implicates an area of core ERISA concern").

The requirements directly and indirectly affect the relationship between private employers and the provision of health care coverage, a relationship that has traditionally been governed by ERISA. After distilling a number of the various tests utilized in the Ninth Circuit to determine the question of preemption, the *Rutledge* court observed that under each test, "a core factor leading to the conclusion that a state law is preempted is that the claim bears on an ERISA-regulated relationship." 201 F.3d at 1219 (citing *Blue Cross of California v. Anesthesia Care Associates*, 187 F.3d 1045, 1053 (9th Cir. 1999) ("[W]e look to whether the state law encroaches on relationship regulated by ERISA ...."); *Emard v. Huges Aircraft Co.*, 153 F.3d 949, 957 (9th Cir. 1998) (In determining whether state law would "frustrate the purposes" of the statute, a factor is the existence of state-law regulation of ERISA relationships.); *Operating Engineers*, 135 F.3d at 678 (A preemption factor is "whether the state law regulates certain

11

ERISA relationships ....") (quoting *Aloha Airlines, Inc.* (internal quotation marks omitted)));
*Geweke Ford v. St. Joseph's Omni Preferred Care Inc.*, 130 F.3d 1355, 1358 (9th Cir. 1997)
("A state law claim is preempted if it 'encroaches on the relationships regulated by ERISA.'"
(citation omitted); *see also Arizona State Carpenters Pension Trust Fund v. Citibank (Arizona)*,
125 F.3d 715, 724 (9th Cir. 1997) (holding that there is no preemption where, *inter alia*, the
state laws "do not affect the relationships between the principal ERISA participants"). The
Court finds that the Ordinance requires the modification of the core relationship between the
private employers and their intended health care beneficiaries. In order to comply with the
expenditure requirements, employers would either have modify the administration of their
existing ERISA plans where the current payments are below the threshold or structure their
additional payments by making unlawful reference to the amounts paid under existing ERISA
plans.

Also, the Ordinance has a prohibited connection with ERISA plans because it interferes
with nationally uniform plan administration. One of the principal goals of ERISA is to enable
employers "to establish a uniform administrative scheme, which provides a set of claims and
disbursements of benefits." *Fort Halifax Packing*, 482 U.S. at 9. Uniformity is made impossible
where ERISA plans are subject to different legal obligations in different states or local
jurisdictions. *Egelhoff*, 532 U.S. at 148. "Requiring ERISA administrators to master the
relevant laws of 50 States and to contend with litigation would undermine the congressional goal
of 'minimiz[ing] the administrative and financial burden[s]' on plan administrators – burdens
ultimately borne by the beneficiaries." *Id.* at 149 (citing *Ingersoll-Rand*, 498 U.S. at 142). The
"tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction" is
exactly the burden ERISA seeks to eliminate. *Ingersoll-Rand*, 498 U.S. at 142. "The [statute]
would deny [the employer] the uniform nationwide administration of its healthcare plans by
requiring it to keep an eye on conflicting state and local minimum spending requirements and
adjust its healthcare spending accordingly." *Fielder*, 475 F.3d at 197. If the expenditure
requirements of the Ordinance were not considered preempted by ERISA, employers would
necessarily have to keep an eye on the minimum heath care spending requirements in each

12

locality in order to comply with potentially conflicting requirements. Mandating this type of varied compliance – both with the substantive minimum benefits levels requirements and the administrative reporting, recordkeeping and disclosure requirements – conflicts with ERISA's promise to "provide a uniform regulatory regime over employee benefit plans." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004); *Shaw*, 463 U.S. at 98-100.

### 2. The Ordinance Expenditure Requirements Make Unlawful Reference to Employee Benefit Plans.

In addition, the Court finds that the provisions of the Ordinance make unlawful reference to employee benefit plans. First, the statute specifically references the existence of ERISA plans in its expenditure requirements provisions. Ord. § 14.1(b)(7) (calculating employer liability by looking at "amounts paid by a covered employer to its covered employees or to a third party ... for the purpose of providing health care services for covered employees."); Final Regs. § 6.2(E) (specifically referring to different types of ERISA plans, and providing that employers do not receive credit if an employee declines coverage under a plan "that requires contributions by a covered employee."). In addition, liability under the Ordinance is determined exclusively with reference to employer-provided health benefits, mostly under existing ERISA plans, which plans are essential to the operation of the Ordinance. *See Fielder*, 475 F.3d at 196 ("The undeniable fact is that the vast majority of any employer's healthcare spending occurs through ERISA plans. Thus, the primary subjects of the [statute] are ERISA plans, and any attempt to comply with the [statute] would have direct effects on the employer's ERISA plans.") The expenditure requirements take into account directly whether and how much employers are spending on employee health coverage. The Ordinance requires that the employer examine the amounts "paid by a covered employer to its covered employees or to a third party ... for the purpose of providing health care services for covered employees." Ord. § 14.1(b)(7). In order to enforce the spending provisions of the Ordinance, the City must examine whether employers provide ERISA-governed benefits. In order to determine compliance, the Ordinance necessarily refers to whether and how much an employer pays for employee health coverage under its existing ERISA plans, assuming such employers maintain them at all.

13

This Court finds that such a structure is akin to the statute the Supreme Court found preempted in *District of Columbia v. Greater Washington Board of Trade* which required the employer to provide the same amount of health care coverage for workers eligible for workers compensation. 506 U.S. at 128. The Court found that the employers' existing health care coverage was subject to ERISA and "any state law imposing requirements by reference to such covered programs must yield to ERISA." *Id.* at 130-31. Similarly, here, the Ordinance requires that private employers pay a certain threshold amount to their covered employees, making specific reference to the amounts already paid through private ERISA plans. The mechanism for determining compliance with the expenditure requirements specifically takes into account the amount already spent in private plans subject to ERISA. As discussed *infra*, the structure of the private plans would necessarily be affected by the substantive expenditure requirements as well as the administration of maintaining and demonstrating compliance.

Defendants rely heavily on the decision in *WSB Electric, Inc. v. Curry*, in which the Ninth Circuit found that the two-tier approach of the California regulation of wages was not preempted by ERISA. 88 F.3d 788, 791, 796 (9th Cir. 1996). The court found that the statute which required public works contractors to pay a minimum level of cash compensation and then credited certain benefits paid by those contractors toward that level did not have an impermissible effect on ERISA plans because California's "scheme d[id] not force employers to provide any particular employee benefits ... or to even provide ... employee benefits at all." *Id.* at 793-94. Instead, the law gave credit for both wages and benefits when determining employers' compliance. *Id.* at 790-91; *see also Associated Builders & Contractors of S. Cal. v. Nunn*, 356 F.3d 979, 986 (9th Cir. 2004) (holding that wage statute was not preempted where rates could be satisfied by a mixture of wages and benefits). The *WSB* court distinguished the statute in *Greater Washington* which was preempted because "it imposed an obligation upon an employer that was 'measured by reference' to the level of benefit provided by that employer under an ERISA plan." *WSB*, 88 F.3d at 792-93 (citing *Greater Washington*, 506 U.S. at 128-132). In contrast, the prevailing wage statute at issue in *WSB* merely referenced ERISA plans by taking them into account when calculating the cash wage that must be paid to comply. *Id.* at

14

793. "The scheme does not force employers to provide any particular employee benefits or plans, to alter their existing plans, or to even provide ERISA plans or employee benefits at all." *Id.* (citing *Employee Staffing Services, Inc. v. Aubry*, 20 F.3d 1038, 1041 (9th Cir. 1994)). The *WSB* court held that "a statute 'refers to' an ERISA plan and is preempted if it mentions or alludes to ERISA plans, *and* has some effect on the referenced plans." *WSB*, 88 F.3d at 793.

The holding in *WSB* specifically referred to the calculation of wages, which were to include benefits as part of the total. *Id.* The Ordinance before this Court, however, would require that private employers calculate not wages but benefits available to any covered employee. Not only are these benefits the type already regulated by ERISA, but the analysis required to determine both whether an employee is covered and the amount the employee would be entitled to under the Ordinance with specific reference to amounts already paid under private ERISA plans, would alter the administration of existing private ERISA plans. As a separate spending requirement, apart from any required wages or other benefits, the Ordinance requires a certain threshold payment to ERISA plans or alternatively to the City. In addition, the Court finds that Ordinance's requirements affect the relationship between private employers and the provision of health care coverage. Therefore, according to the somewhat modified test set out in *WSB*, the Court finds that the statute refers to ERISA plans because it both "mentions and alludes to ERISA plans, *and* has some effect on the referenced plans." *See id.*

Accordingly, under either analysis, the Ordinance is preempted because it has both a connection with and references ERISA plans.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's motion for summary judgment and DENIES the City's and the Intervenors' motions for summary judgment. State laws are preempted by ERISA "insofar as they may now or hereafter relate to any employee benefit plan" regulated by ERISA. 29 U.S.C. § 1144(a). The various cases interpreting the scope of ERISA preemption have established that a state law is preempted where it is related to ERISA plans, that is, where it either has a connection to or makes reference to such plans. Considering the scope of

15

the Ordinance's requirements, the Court concludes that the Ordinance both has an impermissible connection to ERISA plans and makes unlawful reference to such benefit plans.

However, as the Court noted at oral argument in this matter, the goal of providing health care for the people of San Francisco, as well as the nation, is a laudable one. On the other hand, Congress has evinced its intent to preclude state or local governments from passing any legislation that relate to ERISA plans so as to avoid a patchwork of state and local health care programs across the nation. The Court is not convinced that other alternatives for creating a program for providing public health care are not viable. Defendants propose an increased general tax requirement, but state the unfairness of not taking existing health care expenditures into account. Without wading into the legislative dominion, the Court can envision such a tax program that takes existing health care expenditures by private employers into account in the form of tax credits. Further, as the parties allude, there are alternatives such as funding a public health care system by requiring a hourly rate paid to the City. (*See* Intervenors' Motion at 6-7; Opp. Br. at 10 n.8.) Whatever the legislative solution to the problem facing our nation of providing adequate health care, the Court must nevertheless conclude that the San Francisco Ordinance fails to withstand the expansive test of ERISA preemption.

**IT IS SO ORDERED.**

Dated: December 26, 2007

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE